## E. G. MAUER v. STATE OF NEBRASKA.

FILED APRIL 16, 1925. No. 24229.

1. **Criminal Law:** INSTRUCTIONS. Mere nondirection by the trial court will not work a reversal, when proper instructions covering the point were not requested. *Edwards v. State*, 69 Neb. 386.

2. **New Trial:** NEWLY DISCOVERED EVIDENCE. "A new trial should not be granted a party on the ground of newly discovered evidence, unless he makes it appear that the newly discovered evidence is material for him, and that he could not by the exercise of reasonable diligence have discovered and produced it at the trial." *Neal v. State*, 104 Neb. 56.

3. **Evidence** examined, and found to support the verdict.

ERROR to the district court for Douglas county: CARROLL O. STAUFFER, JUDGE. *Affirmed.*

*John M. Berger* and *Edwin C. Boehler*, for plaintiff in error.

*O. S. Spillman, Attorney General*, and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD, THOMPSON and EVANS, JJ.

EVANS, J.

The plaintiff in error (hereinafter termed the defendant) was convicted in the district court for Douglas county of the offenses of unlawfully having in his possession a still and mash, from which conviction and the judgment rendered thereon he prosecutes error.

The errors relied upon for a reversal are: (2) That the verdict is not sustained by sufficient evidence. (4) The court erred in overruling the motion for a new trial. (5) Newly discovered evidence material for the defendant in the court below, now plaintiff in error, which plaintiff herein could not with reasonable diligence have discovered and produced at the trial. (23) The court erred in failing to give instruction covering circumstantial evidence. (24) The court erred in failing to instruct the jury that the mere knowledge of a crime being committed was not sufficient to con-

Mauer v. State.

vict, and that unless the defendant committed some overt act he could not be guilty of possession of intoxicating liquor and mash, as charged in the information. (25) The court erred in refusing to sustain the plaintiff's motion at the close of the evidence for a directed verdict against the defendant in error, State of Nebraska.

The assignment of error relative to the failure of the court to instruct the jury as to particular matters raised by assignments 23 and 24 were not presented to the trial court and will not be further considered. Mere nondirection by the trial court will not work a reversal, where proper instructions covering the point were not requested. *Johnson v. State,* 53 Neb. 103; *Maxfield v. State,* 54 Neb. 44; *Edwards v. State,* 69 Neb. 386.

The fifth assignment of error is based upon newly discovered evidence, which it is claimed, should entitle the defendant to a new trial. There was no application for a continuance at or during the time of the trial, although each individual whose evidence was desired by the defendant, so far as appears, was so situated that his attendance upon the trial court could easily have been secured, or depositions taken. There is no showing of diligence. It follows that this assignment is not well taken. Comp. St. 1922, secs. 10156, 10158; *Cunningham v. State,* 56 Neb. 691; *Neal v. State,* 104 Neb. 56.

The remaining assignments rest upon the alleged insufficiency of the evidence to support the verdict and will be considered together. The evidence of the state was given by three officers, who, under a warrant, made search of the premises, and was in substance as follows: The house where the still was found and where it was operated stood alone, at a distance of about 200 feet from the nearest building, and 5 or 6 blocks from any other building. It was a one and one-half story building, with nothing in the second or upper story but the still and what pertained to its use in the manufacture of intoxicating liquor, there being nothing there which could be used in, or with reference to, the home or dwelling. When the officers, on the day of the

search and arrest, arrived at the door, they could hear the still in operation, the portion thereof used in heating making a hissing noise plainly audible and distinguishable. There was considerable delay in gaining an entrance, repeated knocking upon the door being necessary to have an inmate open it. After three or four minutes the door was opened by a woman, to whom the search warrant was read by one of the officers, the other two going immediately to the upper story, where they found the defendant standing in the door of a room in which was located the still. The condition of the still at that moment was described by one officer as "in operation" and by the other as then very hot, and from which there was dripping the fluid being manufactured. All three officers said the still was very hot, and that the fluid was "moonshine whiskey" dripping from the coil which was a part of the still; that the defendant, so standing in the door of the room in which the still was located, was hatless and in his shirt sleeves. He gave his name as Mauer, and, when asked what he was doing, said he did not live there, but was "visiting," and answered no other questions. He requested several times to be permitted to go down-stairs. There was found up-stairs in the building and in close proximity to the still 15 barrels of corn mash and a 10-gallon can of liquor. The still, the mash and the liquor were identified and received in evidence. No person except the defendant was up-stairs. No persons but the woman, who gave the name of Vanderpool, and the defendant were in the house. It was stipulated that the defendant had no permit to manufacture intoxicating liquors. When the defendant became a witness in his own behalf he testified he had been there 15 minutes, that he was looking for a pair of pliers he had loaned to Mr. Vanderpool, in whose name the lease for the building stood. He did not find the pliers. He also testified that he had been there several times before and had seen the still operated, but made no report of the fact. The woman who opened the door to the officers gave her name as Mrs. Vanderpool. She was requested by the officers to notify her husband when he

came home to appear at the police station.  He did not appear.  On the following day, when examined by the officers, the premises were vacant.  The search was made between 3 and 4 o'clock in the afternoon, and, when examined that night at 11 o'clock by one of the officers, it seemed to be vacant.  From the foregoing facts the jury found the defendant guilty, and under the circumstances they were warranted in so doing.  *Bush v. State,* 112 Neb. 384.  There was no error in the overruling of the defendant's motion for an instructed verdict made at the close of the state's case, or in overruling his motion for a new trial.

The judgment of the district court is

AFFIRMED.